IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MILOS LEUBNER,

      Plaintiff,                         No. 2:08-cv-0853 GEB JFM PS

      vs.

COUNTY OF SAN JOAQUIN,
et al.,                                  <u>ORDER AND</u>

      Defendants.                  <u>FINDINGS AND RECOMMENDATIONS</u>

_____/

          Plaintiff is proceeding pro se and in forma pauperis. Two motions to dismiss came on regularly for hearing April 30, 2009. Plaintiff appeared in propria person. Defendant Thomas W. Mazzera, Esq., appeared pro se. Dana A. Suntag appeared for defendants County of San Joaquin, Christopher Holden, Ernie Schmidt and Deputy Jeff Luck. Upon review of the motions and the documents in support and opposition, upon hearing the arguments of plaintiff and counsel and good cause appearing therefor, THE COURT FINDS AS FOLLOWS:

          Plaintiff father brings a civil rights suit for the willful, intentional and malicious act of illegally removing plaintiff's two minor children from his custody. (September 28, 2008 First Amended Complaint ("FAC").) Plaintiff claims their removal violated the Fourth Amendment, because it was without probable cause or a warrant, and the 14th Amendment,

1

because it deprived him of equal protection, intruded upon his family relationships, and interfered with his parental rights. Plaintiff also includes a state law claim of negligence.

A complaint may be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A Rule 12(b)(6) dismissal can be based on the failure to allege a cognizable legal theory or the failure to allege sufficient facts under a cognizable legal theory. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir.1990); Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 533-34 (9th Cir.1984). In considering a motion to dismiss, the court must accept as true the allegations of the complaint in question, construe the pleading in the light most favorable to the party opposing the motion, and resolve all doubts in the pleader's favor. Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S. 738, 740, 96 S.Ct. 1848 (1976); Jenkins v. McKeithen, 395 U.S. 411, 421, 89 S.Ct. 1843 (1969); Broam v. Bogan, 320 F.3d 1023, 1028 (9th Cir.2003).

For a complaint to avoid dismissal pursuant to Rule 12(b)(6), the complaint need not contain detailed factual allegations; rather, it must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 1974 (2007); Weber v. Department of Veterans Affairs, 512 F.3d 1178, 1181 (9th Cir.2008). While a complaint need not plead "detailed factual allegations," the factual allegations it does include "must be enough to raise a right to relief above the speculative level." Twombly, 127 S.Ct. at 1964-65. Federal Rule of Civil Procedure 8(a)(2) requires a "showing" that the plaintiff is entitled to relief, "rather than a blanket assertion" of entitlement to relief. Id. at 1965 n.3. Legal conclusions need not be taken as true merely because they are cast in the form of factual allegations. Robertson v. Corrothers, 812 F.2d 1173, 1177 (9th Cir.1987); Western Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir.1981). "Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir.2001), amended by

275 F.3d 1187 (9th Cir. 2001). A Rule 12(b)(6) motion to dismiss should be granted when a plaintiff fails to nudge his or her claims "across the line from conceivable to plausible." Twombly, 127 S.Ct. at 1974. "[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim." Epstein v. Washington Energy Co., 83 F.3d 1136, 1139 (9th Cir. 1996). Where the plaintiff is proceeding pro se, the allegations of the complaint must be construed liberally. See Eldridge v. Block, 832 F.2d 1132, 1137 (9th Cir. 1987).

First, plaintiff's Fourth Amendment claim is barred as a matter of law because a parent cannot sue for an alleged violation of the Fourth Amendment on behalf of his minor children. The Fourth Amendment protects against unreasonable searches and seizures. Id. However,

> [w]hile a person has standing to challenge the seizure of his or her own person, Moreno v. Baca, 400 F.3d 1152, 1166 (9th Cir.2005), a person does not have standing to vicariously assert the Fourth Amendment rights of another person. Moreland [v. Las Vegas Metro, 159 F.3d [365], 369.

Osborne v. County of Riverside, 385 F.Supp.2d 1048 (C.D. Cal. 2005). Plaintiff was previously informed that his allegations that his children were wrongfully removed were more appropriately raised as a challenge under the Fourteenth Amendment. (June 25, 2008 Order at 4.)[1] In his opposition, plaintiff has provided no authority to the contrary, arguing he should be permitted to pursue claims under the Fourth Amendment. According, plaintiff's claims under the Fourth Amendment should be denied with prejudice.

---

[1] "In Wallis v. Spencer, 202 F.3d 1126, 1137 (9th Cir.2000) (as amended), the Circuit addressed parents' and children's claims that the children in that case were unlawfully seized and removed from their parents' custody. Id. The Court recognized that the "claims of the parents in this regard should properly be assessed under the Fourteenth Amendment standard for interference with the right to family association." Id. at 1137 n.8. Moreover, "[b]ecause only the children were subjected to a seizure, their claims should properly be assessed under the Fourth Amendment." Id. Because plaintiff is pressing his own claims, his complaint will be dismissed with leave to amend so that he may plead only Fourteenth Amendment violations." (June 25, 2008 Order at 4.)

Plaintiff's state law claim of negligence must also be dismissed. Under the California Tort Claims Act, the "right to sue the sovereign" is conditioned "upon timely filing of claims and actions," and "are elements of the plaintiff's cause of action . . . and conditions precedent to the maintenance of the action." Willis v. Reddin, 418 F.2d 702 (9th Cir. 1969). Timely filing is jurisdictional and must precede the filing of the negligence action herein. County of Los Angeles v. Superior Court, 91 Cal.App.4th 1303, 1314 (2001). Government Code § 911.2(a) provides that the tort claim must be filed "not later than six months after the accrual of the cause of action." Plaintiff failed to timely file a tort claim and, in his opposition, failed to address this requirement or provide proof he filed a tort claim. Accordingly, plaintiff's negligence claim must be dismissed with prejudice. Nguyen v. Los Angeles County Harbor/UCLA Medical Center, 8 Cal.App.4th 729, 732 (1992)(Complete failure to comply with tort claim requirements bars claim.)

The court will now address the remaining Fourteenth Amendment claims. Construed liberally, plaintiff alleges two bases for his § 1983 claims. First, plaintiff alleges that defendants violated his Fourteenth Amendment right to familial association with one another when the minor children were removed without probable cause, a protective custody warrant, or exigent circumstances. Second, plaintiff claims that the continued detention of the children, for almost two years,[2] further violated his Fourteenth Amendment rights to familial association.

It is well-established that custodial parents have a liberty interest in the "companionship, care, custody, and management" of their children. Stanley v. Illinois, 405 U.S. 645, 651, 92 S.Ct. 1208 (1972); see also Lassiter v. Dep't of Soc. Servs., 452 U.S. 18, 27, 101 S.Ct. 2153 (1981) (such right was "plain beyond the need for multiple citation"); Miller v.

---

[2] Plaintiff alleged the children were separated from him for two years. (Original Complt. at 6.) The children were removed on April 24, 2006, but the record does not reflect the actual date the children were returned to either parent. Plaintiff alleges the children's status as dependents of the court was terminated on January 23, 2008. (FAC at 10.) Plaintiff confirmed in court that he now has custody of the minor children and has had them for the last year.

California Dep't of Soc. Servs., 355 F.3d 1172, 1175 (9th Cir.2004). Plaintiff's claim here is based on violation of the Fourteenth Amendment, that parents and children have a constitutional right to live together without governmental interference and will not be separated without due process of law except in emergencies. Mabe, 237 F.3d at 1107). Courts have analyzed threats to remove a child from a family under the fundamental right to familial relations, which includes the liberty interests of parents in the care, custody and management of their children. Doe v. Heck, 327 F.3d 492, 524 (7th Cir. 2003); King v. Olmsted County, 117 F .3d 1065, 1066-68 (8th Cir. 1997). The liberty interest in maintaining the family unit is guaranteed by the Fourteenth Amendment. See Heck, 117 F.3d at 523.

Defendant Mazzera contends the children were removed prior to his appointment, so he cannot be held responsible for any alleged wrongful removal, or for any due process violation that occurred prior to his appointment.

However, liberally construing plaintiff's claims, he alleges defendant Mazzera interfered with plaintiff's parental rights under the Fourteenth Amendment while Mazzera represented the minor children during their continued detention. Specifically, plaintiff contends defendant Mazzera lied to the court when he claimed the "girls are terrified" of plaintiff, resulting in the loss of at least one visitation, and that defendant Mazzera prevented plaintiff from having other visitations with his children. These specific allegations as to defendant Mazzera are sufficient to defeat defendant's motion to dismiss plaintiff's Fourteenth Amendment claim. Defendant Mazzera's motion to dismiss the Fourteenth Amendment claim should be denied, and defendant Mazzera be required to answer the FAC.

Defendants Holden and Schmidt contend that plaintiff's amended complaint fails to state a cognizable claim against them because he failed to allege they personally participated in any conduct that violated his constitutional rights. Plaintiff provides no further specific allegations as to defendant Schmidt in his opposition, stating that defendant Schmidt was one of the defendants who illegally removed his children. (Opp'n. at 6.) Plaintiff contends defendant

Holden lied when he told plaintiff that the "children had read the CPS report and agreed with it." (Id. at 4.)

The Civil Rights Act under which this action was filed provides as follows:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. The statute requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by plaintiff. See Monell v. Department of Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976). "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

Moreover, supervisory personnel are generally not liable under § 1983 for the actions of their employees under a theory of respondeat superior and, therefore, when a named defendant holds a supervisorial position, the causal link between him and the claimed constitutional violation must be specifically alleged. See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978), cert. denied, 442 U.S. 941 (1979). Vague and conclusory allegations concerning the involvement of official personnel in civil rights violations are not sufficient. See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982).

The amended complaint contains only two specific references to actions by defendant Schmidt. First, plaintiff alleges that he sent a small package to his children around Christmas 2006, which was held in defendant Schmidt's office until three weeks after Christmas. (FAC at 26.) Defendant Schmidt asked one of the children "if she wanted the package at all."
/////

(Id.) When the minor realized it was a Christmas present, she suggested it could have been delivered earlier, defendant Schmidt responded, "Do you want the package or not?" (Id.)

Second, plaintiff states that after the jurisdiction/disposition hearing,

> the case was transferred internally within CPS to another department, the Reunification Department, and after a short discussion with the manager of the Reunification Department, Mr. Ernie Schmidt, it became obvious that any joint counseling or visitation with the Children was not forthcoming at all. Yet, in the report prepared by CPS for the jurisdiction hearing, it is clearly stated that the final projected family reunion is planned for November 8, 2006.

(FAC at 38.)

These factual allegations are insufficient to state a cognizable claim as to defendant Schmidt. Moreover, to the extent that plaintiff argues defendant Schmidt was the supervisor who should have been aware of other social worker's actions or statements, such claims fail under a theory of respondeat superior. Thus, defendant Schmidt's motion to dismiss should be granted.

As to defendant Holden, plaintiff alleges the following: Holden requested the Lake County Sheriff's Department conduct an investigation into allegations against plaintiff. (FAC at 13.) Holden was in charge of the case for CPS. (Id.) After the detention hearing, defendant Holden provided plaintiff with names of various agencies in San Joaquin County which provided services for various alleged offenses committed by parents of detained children. (Id.) When asked by defendant Holden whether plaintiff would like to see his children that day, plaintiff agreed, but after waiting for almost an hour, Holden informed him the visit would not occur, but "maybe some other time." (Id.) Plaintiff was repeatedly denied visits with his children by Holden, allegedly because the girls "don't want to see him." (FAC at 13-14.) Plaintiff contends the girls' efforts to contact plaintiff were also thwarted by defendant Holden on numerous occasions. (Id.) Essentially, plaintiff alleges defendant Holden lied to plaintiff about the girls not wanting to see him and lied to the girls to prevent them from seeing plaintiff.

Defendant Holden also allegedly withheld letters addressed to the girls as well as letters they wrote to plaintiff. (FAC at 15.) Defendant Holden interfered with a visit to the girls by their family friend, Lila Erlandson, allegedly by changing her name so the children would not recognize it. (Id. at 16.) Defendant Holden told plaintiff that the children had read the CPS report and agreed with it, even though the children told plaintiff they had not seen the report and did not make the allegations contained therein. (FAC at 17.)

Liberally construing plaintiff's allegations, plaintiff states a claim against defendant Holden because he alleges defendant Holden lied in an effort to intentionally deprive plaintiff of access to his children and repeatedly denied him visitation with the minors. Although defendant argues that plaintiff has only alleged one missed visitation which cannot rise to the level of a constitutional violation, plaintiff specifically alleges he was repeatedly denied visits with the minor children, which is sufficient to survive a motion to dismiss.[3] In addition, plaintiff contends he was deprived of his children for a two year period. Accordingly, defendant Holden's motion to dismiss should be denied and he should be directed to file an answer.

Plaintiff also claims defendant Deputy Luck violated his Fourteenth Amendment rights by illegally removing the minor children. As noted above, plaintiff alleges two bases for his § 1983 claims, deprivation at the time of removal and post-removal deprivation. Because there are no allegations against defendant Luck post-removal of the children, the court will address defendant's claim of qualified immunity as to the initial removal.

Government officials may be entitled to qualified immunity. See Mabe v. San Bernardino County Dep't of Pub. Soc. Servs., 237 F.3d 1101, 1106 (9th Cir.2001) (commenting that "qualified immunity is the general rule and absolute immunity the exceptional case"). The applicability of qualified immunity is determined through a two-step inquiry where the court

---

[3] Plaintiff is cautioned that he will have to provide details of his denied visitations or the length of his deprivation of parental involvement with the minor children, should defendants file a motion for summary judgment. Fed. R. Civ. P. 56.

8

asks: "(1) whether, 'taken in the light most favorable to the party asserting the injury, the facts alleged show the officer's conduct violated a constitutional right'; and, if a violation of a constitutional right [can] indeed be found, (2) 'whether the right was clearly established.' " Sissoko v. Rocha, 412 F.3d 1021, 1038 (9th Cir. 2005) (quoting Saucier v. Katz, 533 U.S. 194, 201 (2001)). In other words, qualified immunity shields government officials from liability for a violation of plaintiffs' rights if "the official[s] objectively could have believed the conduct was lawful." Ram v. Rubin, 118 F.3d 1306, 1310 (9th Cir.1997) (involving the qualified immunity of a social worker and a police officer); see also Devereaux v. Perez, 218 F .3d 1045, 1059 (9th Cir.2000) (Kleinfeld, J., dissenting) ("The question, in a qualified immunity legal analysis, boils down to 'Should they have known better?' ").

Plaintiff targets defendant Luck's actions on April 24, 2006, when, after little investigation, defendant Luck removed the minor children from the mother's custody and refused to turn over custody to the plaintiff, opting to detain them in protective custody. Such steps can violate the rights of parents under the Fourteenth Amendment by interfering with their substantive due process right to family association. Wallis v. Spencer, 202 F.3d 1126, 1137 n.8 (9th Cir. 2000). "Officials may remove a child from the custody of its parent without prior judicial authorization only if the information they possess at the time of the seizure is such as provides reasonable cause to believe that the child is in imminent danger of serious bodily injury. . . ." Id. at 1138 (emphasis added).

Defendant provides a copy of Luck's report detailing the events leading up to the removal, including his belief that the children would not be safe in plaintiff's custody, and that, because the father had been awarded temporary sole custody of the children, he could not release the children to their mother. (Motion, Ex. A at 4.) Defendant points out that "it is appropriate for a peace officer to take custody of a child where the officer has reasonable cause to believe that the child is in imminent danger of serious bodily injury," and argues defendant Luck's report
/////

"substantiates the claims of abuse by plaintiff." (Mot. at 18.) It is undisputed that the detention was made without a warrant.

Given the facts alleged, exigent circumstances existed. Defendant Luck noted that defendant Dones informed him by phone that "there may be some type of abuse going on." (Motion, Ex. A, at 3.) Luck explained his actions as follows:

> (S) BODDY, as well as the victims, became very upset and began to cry, stating that they did not want to go with (S) Leubner. (V) Cleariana LEUBNER and (V) Champagne LEUBNER told [him] that (S) LEUBNER has pornography all over his house, has taken pictures of them while they are nude, and that he corporally disciplines them with a plastic stick with metal objects on the end of it.
>
> Because of these allegations [he] did not feel that the children were safe in the custody of (S) LEUBNER. Also because he had temporary sole custody of the children [Luck] could not release them to their mother, (S) BODDY. [Luck] decided to have them booked into protective custody at Mary Graham Hall in French Camp, California. [Luck] explained to (S) LEUBNER and (S) BODDY that the children were booked into Mary Graham Hall for protective custody pending the investigation of (S) LEUBNER possibly committing child abuse or other related charges.

(Motion, Ex. A, at 4.)

In light of the case law existing at the time, and viewing the evidence in a light most favorable to plaintiff, a reasonable officer could have believed that removal was justified based on the facts alleged.[4] The children, eleven year old twins, related specific incidents of

---

[4] Under California law, the warrantless removal of children is justified where:

> (a) The child has suffered, or there is a substantial risk that the child will suffer, serious physical harm inflicted nonaccidentally upon the child by the child's parent or guardian. For the purposes of this subdivision, a court may find there is a substantial risk of serious future injury based on the manner in which a less serious injury was inflicted, a history of repeated inflictions of injuries on the child or the child's siblings, or a combination of these and other actions by the parent or guardian which indicate the child is at risk of serious physical harm. For purposes of this subdivision, "serious physical harm" does not include reasonable and age-appropriate spanking to the buttocks where there is no evidence of serious physical injury.

10

abuse by plaintiff.[5] Government actors need more than simple probable cause before they can remove a child without a court order. This rule has been clearly established in this circuit for some time and is additionally codified in California state law. Cal. Welf. & Inst.Code § 305 (permitting peace officers to take a minor into temporary custody without a warrant based on reasonable cause and if "the minor is in immediate danger of physical or sexual abuse"); <u>Mabe</u>, 237 F.3d at 1108 n.2 (noting that "a showing of probable cause does not [likewise show that a child] was in imminent danger of serious physical injury [or] justify a warrantless removal"). Cf. <u>Hatch v. Dep't for Children, Youth & Their Families</u>, 274 F.3d 12, 21 (1st Cir.2001) (rejecting the Ninth Circuit approach and holding that a mere "objectively reasonable suspicion of abuse justifies protective measures"). Because defendant Luck's actions, as alleged, were reasonable in light of clearly established law, they are entitled to qualified immunity as to the initial removal.

Finally, the County of San Joaquin argues that it should be dismissed because plaintiff has failed to demonstrate a constitutional violation, attempted to hold the County liable under the theory of respondeat superior, and failed to adequately plead an official policy claim under <u>Monell v. Department of Social Services</u>, 436 U.S. 658, 690, 98 S.Ct. 2018 (1978). (Mot. at 21.) Defendant County contends this claim should be dismissed with prejudice as plaintiff was previously informed of these distinctions.

/////

---

Cal. Welf. & Inst. Code § 300(a).

[5] For example, Champagne told Luck that plaintiff "hits her with a stick, he has slapped her and he has kicked her," and has taken nude photos of her. (Motion, Ex. A, at 4.) She also told Luck a neighbor friend had witnessed plaintiff putting Champagne and Cleariana "in a closet and hitting them with a plastic stick that has metal objects on the end of it." (<u>Id.</u>) Cleariana told Luck that plaintiff had hit her "with a stick with metal objects on the end of it." (Motion, Ex. A, at 5.) "She said the stick has left welts on her as well as a small scar on her stomach" (id.), which she showed Luck. Luck stated he "saw an approximate half inch very light scar mark on her stomach that may or may not be consistent with this stick." (<u>Id.</u>) About two weeks ago, plaintiff slapped Cleariana and gave her a bloody nose. (<u>Id.</u>) She also confirmed plaintiff had taken nude photos of her and her sister. (<u>Id.</u>)

11

Plaintiff concedes he has failed to plead an adequate Monell claim against defendant County.

Defendant County's motion is well taken. Plaintiff has failed to allege specific acts by the County, and cannot sustain allegations based on a theory of respondeat superior. Moreover, because exigent circumstances existed justifying the children's initial removal, it is unlikely plaintiff could adequately plead a Monell claim of pattern and practice against the County. Accordingly, plaintiff's claims against San Joaquin County should be dismissed with prejudice, without leave to amend.

### Second Amended Complaint

By order filed March 30, 2009, plaintiff's motion to amend was denied without prejudice to its renewal, accompanied by a proposed second amended complaint, on or before the close of business April 17, 2009. On April 17, 2009, plaintiff filed the proposed second amended complaint. Plaintiff failed to file a motion to amend, but it is clear in reviewing his oppositions to the instant motions to dismiss that he seeks leave to amend.

The Federal Rules of Civil Procedure provide that a party may amend his or her pleading "once as a matter of course at any time before a responsive pleading is served." Fed. R. Civ. P. 15(a). Although the allegations of a pro se complaint are held to "less stringent standards than formal pleadings drafted by lawyers," Haines v. Kerner, 404 U.S. 519, 520 (1972) (per curiam), plaintiff will be required to comply with the Federal Rules of Civil Procedure and the Local Rules of the Eastern District of California.

Plaintiff's original complaint consisted of 18 pages. Plaintiff's first amended complaint expanded to 27 pages. Plaintiff's proposed second amended complaint has grown to 37 pages and is accompanied by 74 pages of exhibits. Plaintiff attempts to allege causes of action under the Fourth, Fourteenth, First and Ninth Amendments to the United States Constitution, although the gravamen of his complaint remains the alleged wrongful removal of the minor children from his custody and their detention for two years. In addition to providing

additional factual support for his claims, plaintiff includes citations to legal authorities without explanation, and numerous quotes from various legal authorities, along with personal comments about same. Page 26 of his second amended complaint provides his "Points and Authorities," which lists 22 different items, most of which are cases without citations, and some of which are statutes (for example, number 10 is "California Penal Code.")

In McHenry v. Renne, 84 F.3d 1172, 1177 (9th Cir. 1996), the Ninth Circuit Court of Appeal upheld the dismissal of a complaint it found to be "argumentative, prolix, replete with redundancy, and largely irrelevant. It consists largely of immaterial background information." The court observed the Federal Rules require that a complaint consist of "simple, concise, and direct" averments. Id. As a model of concise pleading, the court quoted the standard form negligence complaint from the Appendix to the Federal Rules of Civil Procedure:

> 1. Allegation of jurisdiction.
>
> 2. On June 1, 1936, in a public highway, called Boylston Street, in Boston Massachusetts, defendant negligently drove a motor vehicle against plaintiff, who was then crossing said highway.
>
> 3. As a result plaintiff was thrown down and had his leg broken, and was otherwise injured, was prevented from transacting his business, suffered great pain of body and mind, and incurred expenses for medical attention and hospitalization in the sum of one thousand dollars.
>
> Wherefore plaintiff demands judgment against defendant in the sum of one thousand dollars.

Id.

Phrased another way, "Vigorous writing is concise." William Strunk, Jr. & E.B. White, The Elements of Style, § III, ¶ 13 <http://www.bartleby.com/141>.

Plaintiff's second amended complaint suffers from many of the same problems as the pleading dismissed in McHenry: there is much "'narrative rambling[]'" yet a marked lack of "notice of what legal claims are asserted against which defendants." Id. at 1176. As in McHenry, "[p]rolix, confusing complaints such as the ones plaintiffs filed in this case impose

13

unfair burdens on litigants and judges." Id. at 1179.  Accordingly, the second amended complaint should be dismissed.  In light of the above, this action may proceed on plaintiff's first amended complaint.  Or, if plaintiff wishes to file a motion to amend, accompanied by a proposed third amended complaint that complies with the instant recommendations, plaintiff will be granted thirty days from any order of the district court addressing the instant recommendations, in which to file both a motion to amend and a third amended complaint.

However, plaintiff is cautioned that any third amended complaint will be limited to fifteen pages.  Plaintiff may use the court's form for filing a civil rights action, which will be provided.  Plaintiff should refer to the court's order of June 25, 2008, the instant order, and the Federal Rules of Civil Procedure for guidance in drafting a further amended document or completing the court's form complaint.  Plaintiff is cautioned that he does not need to provide points and authorities or citations to legal authorities.  Plaintiff need only set forth specific facts supporting his theory that the named defendant violated those rights.  Plaintiff should also include specific dates he was permitted to have visitation, what dates he was refused visitation, and on what date custody of the children was returned to him or to the mother.

Plaintiff shall not re-plead a cause of action under the Fourth Amendment or include his state law claim of negligence, or name those defendants this court has recommended be dismissed from this action.  This action is proceeding solely on plaintiff's claims that defendants violated his parental rights under the Fourteenth Amendment.  Plaintiff must set forth specific facts that demonstrate how each defendant violated those rights under the Fourteenth Amendment.  Plaintiff may pursue only those claims personal to himself; the instant action is not a class action.  Plaintiff need not provide examples of other parent's experiences with Child Protective Services.

Plaintiff is cautioned that his failure to abide by this court's order may result in a recommendation that this action be dismissed for his failure to comply with court orders.

/////

Finally, on April 29, 2009, plaintiff filed a declaration regarding corrections for omissions to his second amended complaint. Plaintiff is advised that all of his claims must be contained within one pleading. The court will not entertain piecemeal pleadings. Accordingly, plaintiff's declaration will be placed in the court file and disregarded.

IT IS ORDERED that the Clerk of the Court is directed to send plaintiff the form for filing a civil rights complaint pursuant to 42 U.S.C. § 1983.

IT IS HEREBY RECOMMENDED that:

1. Defendant Mazzera's February 25, 2009 motion to dismiss be granted as to plaintiff's first and third causes of action, but denied as to plaintiff's second cause of action under the Fourteenth Amendment;

2. County defendants' March 2, 2009 motion to dismiss the first and third causes of action be granted; their motion to dismiss plaintiff's Fourteenth Amendment claims be

    a. Granted as to defendant Schmidt;

    b. Denied as to defendant Holden;

    c. Granted as to defendant Deputy Luck;

    d. Granted as to defendant County with prejudice.

3. Plaintiff's April 17, 2009 second amended complaint (proposed) be dismissed;

4. Within thirty days from the date of an order from the district court addressing the instant recommendations, plaintiff shall file the attached Notice of Election in which he shall choose one of the following options:

    a. Proceed with his first amended complaint, filed September 29, 2008, in which case defendants Mazzera and Holden shall file a responsive pleading twenty days thereafter; or

    b. File a motion to amend, accompanied by a proposed third amended complaint that complies with the instant recommendations.

/////

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within ten days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: May 4, 2009.

UNITED STATES MAGISTRATE JUDGE

/001; leubner.mtd

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MILOS LEUBNER,

        Plaintiff,                         No. 2:08-cv-0853 GEB JFM PS

    vs.

COUNTY OF SAN JOAQUIN,
et al.,                                     <u>NOTICE OF ELECTION</u>

        Defendants.
_____/

        Plaintiff hereby elects the following course of action in compliance with the court's findings and recommendations signed _____.

        _____      Proceed with his first amended complaint, filed September 29, 2008, in which case defendants Mazzera and Holden shall file a responsive pleading twenty days thereafter;

                                    **OR**

        _____      File a motion to amend, accompanied by a proposed third amended complaint that complies with the instant recommendations. The motion to amend and proposed third amended complaint are appended.

DATED:

                                                     _____
                                                   Plaintiff